Our sixth and final argument of the day comes in Appeal No. 24-3044, Emily Watts v. the Commissioner of Social Security Okay, I see Mr. Sloan, yeah Mr. Yarnell is here as well. Okay, Mr. Sloan, nice to see you again. Thank you. May it please the Court, Stephen Sloan on behalf of Appellant Emily Watts on behalf of Kenny Watts. This case turns on two basic errors. First, the ALJ inaccurately rejected the agency's own medical expert, Dr. Frey, a magna cum laude Harvard graduate who identified exertional and manipulative limits consistent with the objective evidence in the record. Second, the ALJ failed to properly address Mr. Watts' vascular dementia, ignoring or minimizing much of the evidence of his cognitive deficits, and violating the Appeals Council remand order, thereby resulting in findings that are both errors of law as well as illustrating a lack of substantial evidence supporting the ALJ's decision. Regarding the opinion of Dr. Frey, the ALJ rejected her findings upon the basis of three provided a checkbox form, two, that she cited only subjective findings or subjective complaints and identified no objective findings, and three, that she included a number of limitations that have no link to a medically determinable impairment. Now the first and second of these rationales are effectively sort of under the same umbrella, arguing that Dr. Frey has not really supported her opinion with reverence to any evidence, simply providing a checkbox and subjective complaints. But of course Dr. Frey did identify objective findings, specifically pointing to exhibits in the record that were typically highly specific to the impairments for which they were cited for. What medical evidence do we have in the record that demonstrates that the vascular dementia was medically determinable impairment prior to December of 2018? So we did have...so there's no diagnosis prior to that period of time, but there are findings on brain MRIs that were showing it wasn't specific to vascular dementia. I think always when we're dealing with medical, there's some questions and it only becomes apparent later after more testing. But we agreed the ALJ could not have looked at those bare findings and determined that the vascular dementia was before December of 2018. Right. I think what we're dealing with here is more about the functional implications of that subsequent finding. And so when we look at earlier in the record at 2015, my client had a...or rather Mr. Watts had a full-scale IQ testing of 60 that was identified as sort of an isolated event by the state agencies at the time. And eventually, essentially they didn't credit the full extent of that because they said he had no diagnosis of an intellectual disorder. Mr. Sloan, can I...before you leave this point, can I pick up on what Judge Pryor is asking you? Absolutely. I just want to...okay. So the checkbox form that we're talking about is in the record at 3293-3302. That's the page number, right? It's filed as document 8-20. You've seen it. It's this here checkbox form. Yes. Okay. So I want to make sure I know what you're arguing. You're arguing that down here in the vascular dementia aspect of Dr. Fry's form, that's what Judge Pryor was pointing you to, right? Yes. Okay. Where Dr. Fry lists a bunch of things, including medical documentation of this, evidence of extreme limitations. There's no question Mr. Watts was limited. There's no doubt about that. What that evidence comes to is the point that Judge Pryor stated, that the claimant met this listing, initially met this listing on 12-21-18. Okay. Is your point that if you focus on the substance of what's listed, that it shows that he was disabled prior to that date? No. I think what I'm focusing on is on page 3301. 3301 is where Dr. Fry lists the specific impairments. Okay. And you're saying if you go look at them substantively, you go track down 1F, 2F, etc.? That's correct. And some of those are specific. One of those, actually I think two of those exhibits are both solely consist of a 2009 EMG. Okay. But we know because she listed them, it's a fair inference because she listed them, right? And they actually do refer to medical records. They're not just made up numbers. Correct. Okay.  That she looked at them and she drew a conclusion. That's correct. And the conclusion she drew was the one Judge Pryor stated, that the disability was met on 12-21-18. To clarify, the disability as of a listing... Vascular dementia. As of a listing was met as of that point. Yeah. And she also completed residual functional capacity, functional check boxes that indicate limitations that were not included in the ALJ's opinion, including specifically with regards to the right median neuropathy. But it's not enough to simply have the impairment, right? There has to be a link. Correct. And here we have the impairment and then we have the symptoms. And that's actually what the judge cited, said that she relied, Dr. Frey only relied on the symptoms when in fact Dr. Frey had initially indicated the exhibits that supported the severe impairments, then cited the ongoing weakness and numbness in the right hand as supporting a limitation to occasional handling and fingering of the right upper extremity, which is just completely unaccounted for in the ALJ's decision. And so that shows sort of the, you know, we do have a logical bridge between the evidence and Dr. Frey's conclusions. Obviously in cases like this we, I think especially in cases that span 10 years, you know, we would hope for even more specificity and maybe more clear bridges between the two of them. But that wasn't really the judge's criticism here. The judge's criticism here was that there was no, it was only subjective evidence. There's no indication that the judge was even aware that Dr. Frey cited exhibits, showing really that Dr. Frey had an understanding of what happened in the record, you know, as opposed to what the judge's apparent, the ALJ's apparent belief that... I want to make sure I'm making the connection because what we're asking is whether or not the ALJ properly assessed the weight to give Dr. Frey's opinion. And so if we're looking at supportability, I want to make sure that I understand exactly the position you're taking today is that the ALJ did not do enough to discard some of the limitations that Dr. Frey suggested. Well, I think really going to the limitations that Dr. Frey suggested really shows more to the harm of the ALJ making that improper evaluation of Dr. Frey. Because certainly if the judge made an improper evaluation and there was no real consequence to it, we wouldn't have an argument, but there are kind of very real consequences here. But really what the overall argument is that the ALJ really didn't provide any substantive reasons for disagreeing with Dr. Frey. She contrived ones that are not based on substantial evidence. She contrived also this idea there was a lack of a link between some of the limitations in Dr. Frey's emotional capacity analysis and impairments. But, I mean, ultimately... But it's not a wholesale discount of or disregard of Dr. Frey's opinion, right? The ALJ did choose to afford a limited weight. I think oftentimes in practical reality, I mean, I think the judge gave limited weight to I think every single opinion in the medical record. Well, but this was the one that stood out, I think, to the ALJ, and at least from my reading of the briefs, too. This is the one where you do have or your Mrs. Watts, on behalf of her late husband, has evidence of the diagnosis of vascular dementia coming on 12-21-18. I mean, it's pretty clear from the medical record. Right, and I don't think we're disagreeing with... I'm not even sure we're disagreeing. We're not really arguing that he met the listing necessarily before that. What we're arguing is more about the impact of that vascular dementia on a multitude of other factors that were specifically highlighted by the appeals counsel and were ignored, including the judge repeatedly talked about his failure to follow treatment, for example, while ignoring that he really wasn't cognitively the type of individual who could follow up on treatment very well. In fact, at a certain point, he indicated that after his surgery for the right carpal tunnel that he... But I think the argument loses steam here. If Dr. Frey says dementia, vascular dementia happens in December of 2018, the ALJ would not have tied those limitations that we see in the RFC to Dr. Frey herself did not tie those limitations to the vascular dementia because the vascular dementia was not medically determined until... I'm just trying to make sure I'm following where you want this to go. I think vascular dementia is a little bit more unclear from Dr. Frey's opinion about whether it relates back as far as the functional deficits, but I think the focus really, as kind of highlighted in my opening, had more to do with the right median neuropathy because limitations on somebody's dominant hand have a very real impact on somebody, particularly when limited to the unskilled level. And so I do think in this case, ultimately, the judge just provided rationales for rejecting Dr. Frey that were just not supported by substantial evidence, and so we do ask that you reverse. Thank you. Okay. Thank you, Mr. Sloan. Mr. Yarnell, nice to see you. May it please the Court, Eric Yarnell on behalf of the Commissioner of Social Security. We ask the Court to affirm the ALJ's decision because it was reasonable and supported by substantial evidence. No one is disputing that Mr. Watts became disabled in December of 2018, but the appellant contends that Mr. Watts became disabled in 2008. So the ALJ was tasked with assessing the evidence over this decade of time, between 2008 and 2018. Now, there's a lot of medical evidence pertaining to that period, and in that evidence, there's evidence of Mr. Watts functioning well, and there's evidence of him functioning with limitation. But the law gives the ALJ the task with sorting through this evidence, parsing it out, and it puts the burden on the claimant to prove disability. So in this case, the ALJ was reasonable in finding that Mr. Watts did not prove the existence of disabling functional limitations between 2008 and 2018. And I did want to speak to Counsel's point about Dr. Frey's opinion. The ALJ reasonably evaluated this opinion in the decision. The ALJ indicated that the cited medical and clinical findings that Dr. Frey provided, that the opinion was unsupported by those findings that Dr. Frey supplied. And it's obvious from the form that Dr. Frey didn't really discuss the evidence at all. But the ALJ also found that her opinion was inconsistent with the objective medical evidence, Mr. Watts' course of treatment at times, and Mr. Watts' activities during this period of time. And the appellant says nothing to show that the ALJ's evaluation of this opinion was unreasonable, which is the key aspect of the substantial evidence standard of review. And I also want to touch on Mr. Sloan's comments about vascular dementia. Here, too, the ALJ reasonably evaluated this condition and found that it was not established by the evidence prior to December 2018. The appellant says nothing to show that the ALJ's evaluation was unreasonable. It was not diagnosed until December 2018. And even Dr. Frey herself did not believe that there were any work-related limitations due to this impairment before December 2018. In fact, with respect to cognitive functioning, mental functioning, there's no opinion indicating the presence of disabling mental limitations, greater disabling limitations during this period prior to December 2018. So, again, no indication in the record that it was unreasonable for the ALJ to evaluate the evidence, as she did. Mr. Watts clearly deteriorated as of December 2018, but an ALJ is limited by the evidence, and the ALJ reasonably determined here that the evidence prior to that point the ALJ simply did not establish disabling limitations, relying on objective evidence, relying on treatment history, including the dearth of treatment at times, and also relying on admitted activities during this period of time. Mr. Arnold, I have a question for you. We have said over and over again that the claimant, the one seeking benefits, bears the burden of proving disability. You can find hundreds of cases that say that. There's an argument that runs through Mr. Sloan's briefs that there may be times where an ALJ shoulders a burden, not the claimant, the ALJ, and the burden is to seek updated medical evidence and to bring that into the administrative record. Stepping outside of this case, when does the ALJ—I mean, this is what you do every day— when does the ALJ bear an affirmative burden like that? Well, we believe that the case law suggests that it's when the record itself is insufficient. And in that case, there might be an additional burden to develop the record and seek— But doesn't the claimant—as part of the claimant's burden, isn't the claimant one that bears the responsibility of making sure that the record is sufficient? We would say— As part of attempting to prove her or his claim. Yes, Your Honor. And it should be said that even in this case, if we take the perspective of the prior ALJ, who did—the reason Dr. Frey is involved in this case is because there was an acknowledgement that, you know, we have this new kind of evidence as of 2018. We should get it evaluated. So that's when Dr. Frey was summoned. She gave her opinion. Claimant found disability as of 2018. So with respect to this ALJ, she's only looking at the period of time between 2008 and 2018, and there's nothing new in that. I think some of the case law suggests that if it's new and potentially material evidence— Yeah, I'm not—that's why I tried to phrase it in a way. I'm not so much focusing on here because what you recounted, tracks what I understand the path to, you know, the second ALJ or the third ALJ getting involved here, what brought us here. But Mr. Sloan is nonetheless suggesting that there's law out there suggesting that there may be, in some circumstances, the ALJ affirmatively may be under a burden to develop evidence. That's new to me. We don't have to get into it here on this fact pattern, but I just wanted to get—given your expertise, get the benefit of what kind of case does that look like? Well, I'm not sure I could speak to that in hypothetical terms, Your Honor. I'll just say that, of course, the ALJ does have the duty to develop the record, but we put a lot of emphasis on the fact that the burden of proof is on the claimant. So we'll leave it to another day to sort that Venn diagram out? As you say, Your Honor. Pull that a little bit. There's a suggestion that the ALJ did not fully appreciate Dr. Frey's assessment. Was there a duty? I mean, that's where I'm hearing that in the briefing, is that there was an obligation from the ALJ to do something further. Well, we don't think so because—so the regulation that kind of governs the ALJ's evaluation of the opinion, the regulation governing this case, under the banner of supportability, it says that the supporting explanations that the medical source provides factors into supportability. So the regulation itself is saying the ALJ can look at this opinion and say supportability is not there. And there was no kind of affirmative duty to either recontact her or— That's where I'm going, is there. So that's the position, is that there was no duty after the ALJ finds there's lack of supportability here to recontact Dr. Frey. That's correct, Your Honor, no duty. And I'll say that the Atkins case, which I believe was in briefing, that says an ALJ is not required to call on doctors where the record is adequate to make a decision. And certainly in this case, we say that the record was very adequate to make a decision. Okay. Hearing no further questions, do you have any final thoughts? Just that we ask the Court to affirm the ALJ decision and the district court. Okay. Thank you, Mr. Yarnell. Mr. Sloan, we'll give you a minute on rebuttal if you want to take it. Anything you want to respond to? Yes, thank you. Just, I think, a couple points. This is—he emphasizes 10 years. It is 10 years. It's a complicated case. That's the reason why Dr. Frey was—we have a multitude of different opinions that were all considering evidence in isolation. None of them have considered the medical evidence as a whole. And while the ALJ does have the final responsibility for putting together the RFC, Seventh Circuit case law is very clear that there's a clear admonition against applying doctor. And so I think to answer your question about when is a judge required to bear some of that burden there, I don't think it's so much about the burden in any sort of procedural way, but more about the substantial evidence burden of the ALJ needing to support their findings with medical evidence. And when we have EMGs and MRIs that the ALJ is not an expert at interpreting into functional limitations, that's when we call an expert like Dr. Frey. And that's what happened in this case. And instead of crediting it, they contrived reasons that were simply fabricated. And so we do ask that you reverse. So is the principle that you're wanting us to underline here is that if the ALJ requests additional information, then they must find that or go along with the limitations provided by that additional medical evidence? No. But it does place greater scrutiny on them to provide good reasons as to why they're rejecting their own medical expert. And I think that's consistent with this court's case law. And I think Kimplin speaks more specifically to the need for updated medical opinions in those sorts of circumstances. Thank you. Thank you. Mr. Sloan, thanks to you. Mr. Yarnell, thanks to you. We'll take the appeal under advisement. That concludes today's argument, so the court will be in recess.